**PELTON GRAHAM LLC**
Brent E. Pelton (BP 1055)
Taylor B. Graham (TG 9607)
111 Broadway, Suite 1503
New York, NY 10006
Telephone: (212) 385-9700
www.peltongraham.com

*Attorneys for Plaintiffs and the putative FLSA Collective*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

**GURDEEP SINGH, RAJINDER SINGH, JASVIR SINGH GHOTRA, GIAN SINGH MALTANI, JADGWINDER SINGH, AVTAR SINGH, and PRITHVIPAL SINGH, Individually and On Behalf of All Others Similarly Situated,**

**Plaintiffs,**

**-against-**

**BSW GENERAL CONSTRUCTION CORP., RAJINDER SINGH, ARSHJEET SINGH, and QBE INSURANCE CORPORATION,**

**Defendants.**

**COLLECTIVE ACTION COMPLAINT**

**Jury Trial Demanded**

Plaintiffs Gurdeep Singh, Rajinder Singh, Jasvir Singh Ghotra, Gian Singh Maltani, Jadgwinder Singh, Avtar Singh, and Prithvipal Singh (the "Plaintiffs"), individually and on behalf of all others similarly situated, by their attorneys, Pelton Graham LLC, allege as follows:

## NATURE OF THE ACTION

1. Plaintiffs are construction masons/bricklayers, laborers, workmen and mechanics that provided labor to BSW General Construction Corp. ("BSW") in the performance of BSW's contract with the Sayville Union Free School District ("SUFSD") Board of Education for the publicly-financed masonry reconstruction project at Sayville High School (Contract No.: 58-05-04-03-0-004-032) (the "Public Works Project").

2. For their work, Plaintiffs and the Opt-In Plaintiffs were paid per-shift rates that did not include the applicable prevailing wages and supplemental benefits.

3. For the vast majority of their work on the Public Works Project, BSW failed to pay Plaintiffs any wages whatsoever for several weeks at a time, let alone the prevailing wages and supplemental benefits that they were contractually and statutorily entitled to receive for their work. In addition, although Plaintiffs were told they would be paid on a weekly basis, Defendants paid Plaintiffs with back-dated checks at random times that did not contain any information regarding the corresponding payroll periods, and which frequently were returned by the bank for insufficient funds causing Plaintiffs to incur returned check bank fees.

4. Plaintiffs bring this action on behalf of themselves and all similarly situated employees of BSW who elect to "opt-in" to this action pursuant to Section 216(b) of the Fair Labor Standards Act ("FLSA") (the "Opt-In Plaintiffs") to recover unpaid minimum wages and overtime premium pay owed to them pursuant to both the FLSA, 29 U.S.C. §§ 201 *et seq.* and the New York Labor Law ("NYLL"), §§ 650 *et seq*. Plaintiffs also seek to recover unpaid prevailing wages, daily overtime and supplemental benefits which they were entitled to receive for work, including weekend work, they performed on the Public Works Project.

5. Plaintiffs also bring claims for unpaid wages pursuant to NYLL §§ 190 & 193, and for Defendants' failure to provide proper wage notices and wage statements pursuant to NYLL § 195.

6. Finally, Plaintiffs bring claims against Defendant QBE Insurance Corporation, which issued labor and material payment bonds ("Bonds") guaranteeing the obligations of BSW to pay Plaintiffs prevailing wages and supplemental benefits for their work on the Public Works Project.

**JURISDICTION AND VENUE**

7. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1337 and 1343, and supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

8. In addition, the Court has jurisdiction over Plaintiffs' claims under the FLSA pursuant to 29 U.S.C. § 216(b).

9. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because Defendants' business is located in this district and a substantial part of the events or omissions giving rise to the claims occurred in this district.

10. This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

11. On March 20, 2020, New York Governor Andrew M. Cuomo signed Executive Order 202.8 in an effort to stem the spread of COVID-19, which tolls for thirty (30) days "any specific time limit[s] for the commencement, filing, or service of any legal action, notice, motion or other process or proceeding" under any New York State laws or court procedural rules. The thirty (30)-day tolling period began on March 20, 2020 and continued until April 19, 2020. On

April 7, 2020, Governor Cuomo signed Executive Order 202.14, which extended the tolling period to May 7, 2020. Subsequently, on May 7, 2020, Governor Cuomo issued Executive Order 202.28, tolling all statutes of limitations for an additional thirty (30) days through June 6, 2020. On June 6, 2020, Governor Cuomo issued Executive Order 202.38, tolling all statutes of limitations until July 6, 2020. On July 7, 2020, Governor Cuomo issued Executive Order 202.48 tolling all statutes of limitations until August 5, 2020. On August 5, 2020, Governor Cuomo issued Executive Order 202.55, which tolled all statutes of limitations until September 4, 2020. On September 4, 2020, Governor Cuomo signed Executive Order 202.60, which extended the tolling period an additional thirty (30) days to October 4, 2020. On October 4, 2020, Governor Cuomo issued Executive Order 202.67, which extended the tolling period to November 3, 2020. In total, the Executive Orders set forth herein provided for a toll of two hundred and twenty-eight (228) days.

## THE PARTIES

**Plaintiffs:**

12. Plaintiff Gurdeep Singh was, at all relevant times, an adult individual residing in Queens County, New York.

13. Plaintiff Rajinder Singh was, at all relevant times, an adult individual residing in Queens County, New York.

14. Plaintiff Jasvir Singh Ghotra was, at all relevant times, an adult individual residing in Queens County, New York.

15. Plaintiff Gian Singh Maltani was, at all relevant times, an adult individual residing in Queens County, New York.

16. Plaintiff Jadgwinder Singh was, at all relevant times, an adult individual residing in Queens County, New York.

17. Plaintiff Avtar Singh was, at all relevant times, an adult individual residing in Queens County, New York.

18. Plaintiff Prithvipal Singh was, at all relevant times, an adult individual residing in Queens County, New York.

19. During the relevant time period, Plaintiffs performed work for Defendants on a public works project located in Suffolk County, New York.

20. Plaintiffs consent in writing to be party to this action, pursuant to 29 U.S.C. § 216(b), and their consent forms are attached hereto.

**Defendants:**

21. Defendant BSW General Construction Corp. is an active New York corporation with its principal place of business located at 25 Melville Park Road, Suite 209, Melville, NY 11747.

22. Upon information and belief, Defendant BSW General Construction Corp. additionally maintains an office at 91-33 115th Street, Richmond Hill, NY 11418 and 22 Van Buren Avenue, Floral Park, New York, NY 11001.

23. At all relevant times, BSW has been and continues to be an employer engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

24. Upon information and belief, at all relevant times, the Corporate Defendants had gross revenues in excess of $500,000.00.

25. Defendants Rajinder Singh ("Raj. Singh") and Arshjeet Singh ("A. Singh" and together with Raj. Singh, the "Individual Defendants" and, collectively with BSW, the "BSW Defendants") are owners and officers of BSW General Construction Corp. who, at all times

relevant, have overseen the day-to-day operations of BSW's business and implement the pay practices, including the unlawful practices complained of herein.

26. According to the BSW's public LinkedIn profile, Defendant Raj. Singh founded BSW in January 1997 and at the beginning of the relevant time period served as the President of BSW and was at all times involved with the daily administration of BSW. (https://www.linkedin.com/in/bsw-general-construction-6a6030163)

27. Upon information and belief, Defendant A. Singh is a biological son of Defendant Raj. Singh.

28. Upon information and belief, Defendant A. Singh is the current President of BSW.

29. The Individual Defendants participated in the day-to-day operations of BSW and acted intentionally in the direction and control of Plaintiffs and BSW's other similarly situated employees and are an "employer" pursuant to the FLSA, 29 U.S.C. § 203(d) and regulations thereunder, 29 C.F.R. § 791.2, as well as the NYLL § 2 and the regulations thereunder, and are jointly and severally liable with BSW for Plaintiffs' unpaid wages.

30. At all relevant times, Plaintiffs and the Opt-In Plaintiffs were jointly employed by BSW and the Individual Defendants within the meaning of the NYLL, §§ 2 and 651.

31. Upon information and belief, Defendant QBE Insurance Corporation ("QBE") is a corporation organized and existing under the laws of the State of Pennsylvania, and otherwise authorized to do business in New York State, with its principal place of business located at 55 Water Street, New York, NY 10041.

32. QBE is engaged in the surety bonding business and issued a payment bond to Defendant BSW in connection with the Public Works Project under Bond No.: BND-77400030, dated May 3, 2021.

## FLSA COLLECTIVE ACTION ALLEGATIONS

33. Pursuant to 29 U.S.C. §§ 206, 207 & 216(b), Plaintiffs bring their First and Second Causes of Action as a collective action under the FLSA on behalf of themselves and the following collective:

> All persons employed by BSW General Construction Corp. at any time from January 3, 2019 through the entry of judgment in this case (the "Collective Action Period") who worked as construction masons/bricklayers, laborers, workmen or mechanics (the "Collective Action Members").

34. A collective action is appropriate in this circumstance because Plaintiffs and the Collective Action Members are similarly situated, in that they were all subjected to Defendants' illegal policies of failing to pay minimum wages for all hours worked or overtime premiums for work performed in excess of forty (40) hours each week. As a result of these policies, Plaintiffs and the Collective Action Members did not receive legally-required minimum wages for all hours worked or overtime premium payments for all hours worked in excess of forty (40) hours per week.

35. Plaintiffs and the Collective Action Members have substantially similar job duties and were paid pursuant to a similar, if not the same, payment structure.

## STATEMENT OF FACTS

### BSW Defendants' Construction Company

36. At all relevant times, BSW has performed general contracting services and specializes in new construction building and alterations in both indoor and outdoor structures, including roofing, masonry, waterproofing, concrete and painting services, brick work, pointing work, window lintels and caulking, and iron works.

37. Defendant BSW General Construction Corp. was registered with the New York State Department of State on June 22, 2015.

38. At all relevant times, the Individual Defendants have been involved in the day-to-

day operations of BSW, including, among other things, seeking bid general contractor awards, hiring and firing employees to perform work on public works projects and setting the schedules and wage rates of employees.

**The Public Works Project**

39. Upon information and belief, on April 22, 2021 the Sayville Union Free School District Board of Education awarded BSW the Sayville Public High School Masonry Reconstruction contract for the purpose of performing demolition, brick masonry and masonry cleaning and restoration work at the Sayville High School, located at 20 Brook Street West Sayville, Suffolk County, New York 11796, in connection with the Sayville Union Free School District Capital Projects 2020-2021 (the "Public Works Contract").

40. Upon information and belief, BSW was awarded a grand total of approximately $309,000.00 for completion of the contract work performed at the Sayville Public High School.

41. Upon information and belief, the Public Works Contract obligated BSW to pay Plaintiffs at or above the local prevailing wage rates, including any required supplemental benefits and overtime premiums for hours worked in excess of forty (40) hours per week, eight (8) hours per day, hours worked on Saturday and Sunday and hours worked during the evening.

42. On September 15, 2021, during a meeting with the Sayville School District ("Construction Meeting No. 12"), BSW was advised that the Sayville High School Masonry Reconstruction Project is a Prevailing Wage Project. In addition, Defendants were advised that the AIA Certified Payroll requirements submitted in connection with the project required submission of complete and accurate payroll documentation throughout the duration of the project.

43. BSW's failure to pay Plaintiffs prevailing wage rates, supplemental benefits and overtime premiums was a corporate policy that also applied to all of BSW's other similarly situated

employees.

44. As employees of BSW who were assigned to work on BSW's publicly-funded project, Plaintiffs and the Opt-In Plaintiffs were intended third-party beneficiaries of BSW's Public Works Contract.

45. As required by law, a schedule containing the prevailing rates of wages and supplemental benefits ("prevailing wage schedules") to be paid to Plaintiffs and the Opt-In Plaintiffs should have been annexed to and formed a part of the Public Works Contracts. If not annexed to the Public Works Contract, these schedules were expressly or impliedly incorporated into the contracts as a matter of law and/or public policy.

46. The Public Works Contract required BSW to secure a Bond to ensure BSW's obligation to pay Plaintiffs and all other employees performing work pursuant to such contract prevailing wages and supplemental benefits.

47. Defendant QBE issued a Bond the terms of which insured that BSW would fulfill the terms of the Public Works Contract, including payment of prevailing wages and supplemental benefits to Plaintiffs and the Opt-In Plaintiffs in the event that BSQ failed to pay these wages.

48. Both Defendant QBE and BSW are legally obligated to ensure payment of prevailing wages and supplemental benefits to Plaintiffs and the Opt-In Plaintiffs for the performance of their work and labor at the Sayville Public High School Masonry Reconstruction Project. The Payment Bond Agreement specifically addresses and names the Plaintiffs and the Opt-In Plaintiffs and intended beneficiaries of the Payment Bond Agreement and specifically states as follows: " If the Contractor promptly makes payments of all sums due to Claimants, and defends, indemnifies and holds harmless the Owner from claims, demands, liens or suits by any person or entity seeking payment for labor, materials or equipment furnished for use in the

performance of the Construction Contract, then the Surety and the Contractor shall have no obligation under this Bond". QBE Insurance Corporation Payment Bond Agreement, § 2.

49. Throughout the relevant time period, Defendant Raj. Singh represented to the Sayville School District during Construction Meetings that he would be the "Super" on site each day, and in fact, throughout their employment period, Raj. Singh supervised and directed Plaintiffs' and the Opt-Ins' performance of their work, and determined, among other things, whether and if Plaintiffs' and the Opt-Ins' were entitled to take a meal break during their shifts.

50. Upon information and belief, Defendants acknowledged in Sayville School District Meetings that Plaintiffs' and the Opt-Ins would perform work for Defendants seven (7) days per week from Monday through Sunday from approximately 7:00 am through 7:00 pm and at times on Sunday from 7:30 am to 4:30 pm.

**Plaintiffs' Work for Defendants**

51. Plaintiff Gurdeep Singh worked for the BSW Defendants at the Sayville High School Masonry Reconstruction Project from approximately July 15, 2021 until on or about September 21, 2021 (the "G. Singh Employment Period").

52. Although the certified payroll records submitted by Defendants show that Plaintiff Gurdeep Singh was classified as a Laborer, throughout the Gurdeep Singh Employment Period, Plaintiff Gurdeep Singh performed skilled work, such as masonry, bricklaying and carpentry. Specifically, Plaintiff Gurdeep Singh's job duties primarily included cutting, preparing, installing and laying bricks for the construction and repair of walls, welding, setting up metal lintels, framing, and waterproofing.

53. Throughout the G. Singh Employment Period, Plaintiff Gurdeep Singh typically worked six (6) days per week, Monday through Saturday, from approximately 7:00 am through

approximately 7:30 pm, for a total of approximately seventy-five (75) hours per week.

54. Throughout the G. Singh Employment Period, Plaintiff Gurdeep Singh was only permitted to take a meal break during his shift of between approximately ten (10) to fifteen (15) minutes.

55. At no point during the G. Singh Employment Period, was Plaintiff Gurdeep Singh required to track his hours worked at the Sayville High School job site, although he frequently witnessed Defendant Raj. Singh complete timesheets at the Sayville High School.

56. Although the certified payroll submissions from Defendants show that Plaintiff Gurdeep Singh was paid a base rate of pay of $72.11 per hour, at no point did Defendants pay Plaintiff Gurdeep accordingly. For his work, Plaintiff Gurdeep Singh was told by Defendant Raj. Singh that he would be paid approximately three hundred dollars ($300.00) per shift for an eight (8)-hour shift even though Plaintiff routinely worked beyond eight (8) hours per day; however, Defendants also did not pay Plaintiff Gurdeep Singh consistent with this verbal arrangement.

57. Throughout his employment with the BSW Defendants, Plaintiff Gurdeep Singh received a total of three (3) checks in compensation for his work, which were distributed during random non-consecutive weeks, and which did not include the applicable prevailing rates or supplemental benefits of any kind. The three (3) checks Plaintiff Gurdeep Singh received are: 1) Check No. 1761, dated June 25, 2021, in the amount of $1,913.31; 2) Check No. 1992 dated July 23, 2021, in the amount of $1,886.23; and 3) Check No. 1997, dated August 6, 2021, in the amount of $1,913.31.

58. Upon information and belief, Plaintiff Gurdeep Singh should have been paid at the prevailing rate of wages (including supplemental benefits) of a “Mason / Brick/Block Layer” from the New York State Department of Labor Article 8 Prevailing Wage Schedules. Specifically,

Plaintiff Gurdeep Singh should have been paid $63.94 per hour, plus $29.55 in supplemental benefits, and a $53.65 per hour base wage rate for overtime hours worked per week.

59. Throughout the relevant time period, for those weeks when Plaintiff Gurdeep Singh was paid, he was provided with a corporate check signed by Arshjeet Singh.

60. Plaintiff Gurdeep Singh inquired multiple times with Defendant Raj. Singh regarding the inconsistency and lateness in the distribution of his wage payment checks. At all times, Defendant Raj. Singh responded that the payments were distributed late because the BSW Defendants had not received any payments with respect to the Sayville High School Masonry Reconstruction Project.

61. Plaintiff Rajinder Singh worked for the BSW Defendants as a Mason from approximately July 31, 2019 until the start of the COVID-19 closures in or around March 14, 2020, and again at the Sayville Public High School Mason Reconstruction Project from approximately June 28, 2021 until on or about September 14, 2021 (the "Rajinder Singh Employment Period").

62. Throughout his employment period, Plaintiff Rajinder Singh's job duties primarily included installing and laying bricks for the construction and repair of walls, installing and cutting metal rods and lintels, ironwork and welding.

63. Throughout the Rajinder Singh Employment Period, Plaintiff Rajinder Singh typically worked seven (7) days per week, from approximately 7:00 am through approximately 7:30 pm, for a total of approximately eighty-seven and a half (87.5) hours per week.

64. Throughout the Rajinder Singh Employment Period, Plaintiff Rajinder Singh was only permitted to take a meal break during his shift consisting of between approximately ten (10) to fifteen (15) minutes.

65. At no point during the Rajinder Singh Employment Period, was Plaintiff Rajinder

Singh required to track his hours worked at the project site, although he frequently witnessed Defendant Raj. Singh complete timesheets at the Sayville High School.

66. Although the certified payroll submissions by Defendants represent that Plaintiff Rajinder Singh was paid a base hourly rate of $88.49 per hour as a Mason, at no point did Plaintiff Rajinder Singh receive this hourly rate, let alone the applicable prevailing wage rate and supplemental benefits. For his work, Plaintiff Rajinder Singh was told by Defendant S. Singh that he would be paid between approximately two hundred dollars ($200.00) and two hundred fifty dollars ($250.00) per shift; however, Defendants also did not compensate Plaintiff Rajinder Singh according to their oral agreement.

67. Throughout his employment with Defendants, Plaintiff Rajinder Singh received certain checks in compensation for his work for Defendants during random non-consecutive weeks at a time, such that for several weeks, Plaintiff Rajinder Singh did not receive wages of any kind. Furthermore, some of the checks provided to Plaintiff Rajinder Singh were not cleared by his bank because of insufficient funds, which led Plaintiff Rajinder Singh to incur bank fees for each returned check. At no point was Plaintiff Rajinder Singh provided with any replacement checks or have Defendants sought to rectify their pay practices and compensate Plaintiff Rajinder Singh for those weeks when he received no wages of any kind.

68. Upon information and belief, Plaintiff Rajinder Singh should have been paid at the prevailing rate of wages (including supplemental benefits) of a "Mason / Brick/Block Layer" from the New York State Department of Labor Article 8 Prevailing Wage Schedules. Specifically, Plaintiff Rajinder Singh should have been paid $63.94 per hour, plus $29.55 in supplemental benefits, and a $53.65 per hour base wage rate for overtime hours worked per week.

69. Throughout the relevant time period, for those weeks when Plaintiff Rajinder Singh

was paid, he was provided with a corporate check signed by Arshjeet Singh.

70. Plaintiff Jasvir Singh Ghotra worked for the BSW Defendants as a mason tender/assistant and pointer, and driver from approximately June 29, 2021 until on or about September 4, 2021 (the "Jasvir Ghotra Employment Period").

71. Although the certified payroll records submitted by the BSW Defendants show that Plaintiff Jasvir Ghotra was classified as a Laborer, the majority of the work Plaintiff Jasvir Ghotra performed involved skilled work, including masonry, pointing, and brick filling. Specifically, Plaintiff Jasvir Ghotra's job duties included but were not limited to aiding the mason in installing and laying bricks, waterproofing, repointing, filling brick joints, cutting down bricks to size, picking up materials needed for the project at different equipment and supply stores, and picking up and dropping off other employees who worked for Defendants as construction workers and masons to and from the Sayville High School Project job site. Each morning prior to the start of his shift at the Sayville High School Project job site, Plaintiff would pick up BSW Defendants' other employees who performed work at the Sayville Project site at approximately 5:00 a.m. at a designated pick-up stop near 118th Street and Atlantic Avenue in the Richmond Hill neighborhood, to ensure that workers would be at the job site no later than 7:00 a.m.

72. Throughout the Jasvir Ghotra Employment Period, Plaintiff typically worked seven (7) days per week, from approximately 7:00 am through approximately 7:30 pm, for a total of approximately eighty-seven and a half (87.5) hours per week, excluding the time Plaintiff Jasvir Ghotra spent picking up employees prior to the start of their shift and driving them to the Sayville High School Project job site.

73. Throughout the Jasvir Ghotra Employment Period, Plaintiff Jasvir Ghotra was only permitted to take a meal break during his shift consisting of between approximately ten (10) to

fifteen (15) minutes.

74. At no point during the Jasvir Ghotra Employment Period, was Plaintiff required to track his hours worked at the project site or the time he spent prior to his shift picking up other employees or dropping them off in Queens after the completion of their shift at the Sayville High School Project job site.

75. Although the certified payroll submissions by Defendants represent that Plaintiff Jasvir Ghotra was paid a base hourly rate of $72.11 per hour as a Laborer, at no point did Defendants pay Plaintiff accordingly. For his work, Plaintiff Jasvir Singh was told by Defendant Raj. Singh that he would be paid approximately two hundred dollars ($200.00) per shift; however, Defendants also did not pay Plaintiff Jasvir Singh consistent with this verbal arrangement.

76. For his work with BSW Defendants, Plaintiff Jasvir Singh was paid a grand total of approximately seven thousand five hundred dollars ($7,500.00) via certain corporate checks which he received during non-consecutive weeks, and which did not include the applicable prevailing rates or supplemental benefits of any kind. Plaintiff Jasvir Singh also received the following two (2) checks which did not clear with his bank because of insufficient funds: 1) Check No. 1734 dated July 16, 2021; and 2) Check No. 2024 dated July 23, 2021. At no point was Plaintiff Jasvir Singh provided with replacement checks even though Defendant Raj. Singh indicated that he would be paid those wages.

77. Upon information and belief, Plaintiff Jasvir Ghotra should have been paid the prevailing rate of wages (including supplemental benefits) of a "Mason / Building Cement Mason" from the New York State Department of Labor Article 8 Prevailing Wage Schedules. Specifically, Plaintiff Jasvir Ghotra should have been paid $51.97 per hour, plus $33.71 in supplemental benefits for all regular hours, and a $54.42 supplementary benefit rate per for overtime hours worked per

week.

78. At the start of the Jasvir Ghotra Employment Period, Plaintiff was told by Defendant Raj. Singh that if at any point an inspector at the Sayville High School job site inquired about his pay rate, that he should state that he was paid approximately seventy dollars ($70.00) per hour, even though this was not the rate Plaintiff Jasvir Ghotra received in compensation for his work.

79. The checks Plaintiff Jasvir Ghotra received were corporate checks signed by Arshjeet Singh.

80. Throughout the Jasvir Ghotra Employment Period, Plaintiff made several complaints to the BSW Defendants regarding the late wage payments received or lack of wage payments received for other weeks, as frequently as four (4) times per week, but was not provided any response as to these pay practices.

81. Plaintiff Gian Singh Maltani worked for the BSW Defendants as a mason assistant/tender from approximately June 28, 2021 until approximately in or around September 14, 2021 (the "Gian Singh Employment Period").

82. Although the certified payroll records submitted by the BSW Defendants show that Plaintiff Gian Singh was classified as a Laborer, the majority of the work Plaintiff performed involved skilled work, including masonry, pointing, and brick filling. Specifically, Plaintiff Gian Singh's job duties primarily included aiding the mason in installing and laying bricks, waterproofing, repointing, filling brick joints, cutting down bricks to size, loading and unloading materials from the BSW van to the job site area, cleaning and washing the job area, setting up scaffolding materials, and loading waste materials onto the green garbage containers provided by the BSW Defendants.

83. Throughout the Gian Singh Employment Period, Plaintiff Gian Singh typically worked seven (7) days per week, from approximately 7:00 a.m. through approximately 7:30 pm, for a total of approximately eighty-seven and a half (87.5) hours per week.

84. Throughout the Gian Singh Employment Period, Plaintiff Gian Singh was only permitted to take a meal break during his shift consisting of between approximately ten (10) to fifteen (15) minutes.

85. At no point during the Gian Singh Employment Period, was Plaintiff Gian Singh required to track his hours worked at the project site.

86. Although the certified payroll submissions by the BSW Defendants represent that Plaintiff Gian Singh was paid a base hourly rate of $72.11 per hour as a Laborer, at no point did the BSW Defendants pay Plaintiff Gian Singh accordingly. For his work, Plaintiff Gian Singh was told by Defendant S. Singh that he would be paid approximately two hundred ten dollars ($210.00) per shift; however, the BSW Defendants also did not pay Plaintiff Gian Singh consistent with their oral agreement.

87. Throughout his employment with the BSW Defendants, Plaintiff Gian Singh received in compensation for his work a total of seven (7) checks, which were distributed during random weeks and not during the corresponding payroll periods, and which did not include the applicable prevailing rates or supplemental benefits of any kind. Two (2) of these seven (7) checks Plaintiff Gian Singh received were returned by his bank due to insufficient funds, which are: 1) Check No. 2002 dated June 25, 2021, in the amount of $1,913.31; and 2). Check No. 2004 dated July 16, 2021, in the amount of $1, 913.31.

88. The checks Plaintiff Gian Singh received were corporate checks signed by Arshjeet Singh.

89. Upon information and belief, Plaintiff Gian Singh should have been paid the prevailing rate of wages (including supplemental benefits) of a "Mason / Building Cement Mason" from the New York State Department of Labor Article 8 Prevailing Wage Schedules. Specifically, Plaintiff Gurdeep Singh should have been paid $51.97 per hour, plus $33.71 in supplemental benefits for all regular hours, and a $54.42 supplementary benefit rate per for overtime hours worked per week.

90. Plaintiff Jadgwinder Singh worked for the BSW Defendants as a mason bricklayer from approximately July 1, 2021 until on or about September 15, 2021 (the "Jadgwinder Singh Employment Period").

91. Throughout his employment period, Plaintiff Jadgwinder Singh's job duties primarily included installing and filling bricks, brick partition and cutting, and carpentry.

92. Throughout the Jadgwinder Singh Employment Period, Plaintiff Jadgwinder Singh typically worked seven (7) days per week, from approximately 7:00 a.m. through approximately 7:30 pm, for a total of approximately eighty-seven and a half (87.5) hours per week.

93. Throughout the Jadgwinder Singh Employment Period, Plaintiff Jadgwinder Singh was only permitted to take a meal break during his shift consisting of between approximately ten (10) to fifteen (15) minutes, and if Plaintiff Jadgwinder Singh or other workers employed by Defendants as laborers and masons requested to extend their meal break, Defendant Raj. Singh would become upset and would yell for everyone to resume their work.

94. At no point during the Jadgwinder Singh Employment Period, was Plaintiff Jadgwinder Singh required to track his hours worked at the project site.

95. Although the certified payroll records submitted by the BSW Defendants state that Plaintiff Jadgwinder Singh was paid a base hourly rate of $72.11 per hour as a Laborer, Defendants

did not pay Jadgwinder Singh this rate, or the applicable prevailing wage and supplementary benefits for the type of work he performed. In fact, Plaintiff Jadgwinder Singh was told by Defendant Raj. Singh that he would be paid approximately three-hundred fifty dollars ($350.00) per shift. Despite this promise, Plaintiff Jadgwinder Singh received three (3) checks, only one (1) of which cleared in the amount of four thousand dollars ($4,000.00). The other two (2) checks Plaintiff Jadgwinder Singh received were returned by his bank because of insufficient funds, which are : 1) Check No. 2028 dated October 5, 2021; and 2) Check No. 1999 dated September 13, 2021. At no point has Plaintiff Jadgwinder Singh received replacement checks even though Plaintiff has reached out to the BSW Defendants several times to recover his unpaid wages.

96. Upon information and belief, Plaintiff Jadgwinder Singh should have been paid at the prevailing rate of wages (including supplemental benefits) of a "Mason / Brick/Block Layer" from the New York State Department of Labor Article 8 Prevailing Wage Schedules. Specifically, Plaintiff Jadgwinder Singh should have been paid $63.94 per hour, plus $29.55 in supplemental benefits, and a $53.65 per hour base wage rate for overtime hours worked per week.

97. At the start of the Jadgwinder Singh Employment Period, Plaintiff Jadgwinder Singh was told by Defendant Raj. Singh that if at any point an inspector at the Sayville High School job site inquired about his pay rate, that he should state that he was paid seventy dollars ($70.00) per hour, even though this was not the rate Plaintiff Jadgwinder Singh received in compensation for his work.

98. Throughout the relevant time period, for those weeks when Plaintiff Jadgwinder Singh was paid, he was provided with a corporate check signed by Arshjeet Singh.

99. Plaintiff Avtar Singh worked for the BSW Defendants as a mason and bricklayer from approximately August 6, 2021 until on or about August 24, 2021 (the "Avtar Singh

Employment Period").

100. Although the certified payroll records submitted by the BSW Defendants show that Plaintiff Avtar Singh was classified as a Laborer, the majority of the work Plaintiff performed involved skilled work, including masonry. Specifically, Plaintiff Avtar Singh's job duties primarily included installing and laying bricks, and cutting bricks to size.

101. Throughout the Avtar Singh Employment Period, Plaintiff Avtar Singh typically worked seven (7) days per week, from approximately 7:00 a.m. through approximately 7:30 pm, for a total of approximately eighty-seven and a half (87.5) hours per week.

102. Throughout the Avtar Singh Employment Period, Plaintiff Avtar Singh was only permitted to take a meal break during his shift consisting of between approximately ten (10) to fifteen (15) minutes.

103. At no point during the Avtar Singh Employment Period was Plaintiff Avtar Singh required to track his hours worked at the project site.

104. Although the certified payroll records submitted by the BSW Defendants state that Plaintiff Avtar Singh was paid a base hourly rate of $72.11 per hour as a Laborer, at no point was Plaintiff Avtar Singh paid accordingly. For his work, Plaintiff Avtar Singh was told by Defendant Raj. Singh that he would be paid approximately three hundred dollars ($300.00) per shift; however, the BSW Defendants also did not pay Plaintiff Avtar Singh consistent with their oral agreement.

105. For his work, Plaintiff Avtar Singh received one (1) check from the BSW Defendants in the amount of three thousand dollars ($3,000.00), which did not include the applicable prevailing rates or supplemental benefits of any kind.

106. Upon information and belief, Plaintiff Avtar Singh should have been paid at the prevailing rate of wages (including supplemental benefits) of a "Mason / Brick/Block Layer" from

the New York State Department of Labor Article 8 Prevailing Wage Schedules. Specifically, Plaintiff Avtar Singh should have been paid $63.94 per hour, plus $29.55 in supplemental benefits, and a $53.65 per hour base wage rate for overtime hours worked per week.

107. Although Plaintiff Avtar was told by Defendant Raj. Singh that he would be paid on a weekly basis, Plaintiff was not paid any wages for his final two (2) weeks of work.

108. Plaintiff Prithvipal Singh worked for the BSW Defendants as a mason from approximately July 21, 2021 until on or about September 14, 2021 (the "Prithvipal Singh Employment Period").

109. Throughout his employment period, Plaintiff Prithvipal Singh's job duties primarily included installing and laying bricks, brick pointing, replacing lintels, filling brick joints, cutting down bricks to size.

110. Throughout the Prithvipal Singh Employment Period, Plaintiff Prithvipal Singh typically worked six (6) days per week, Monday through Saturday, from approximately 7:00 a.m. through approximately 7:30 pm, for a total of approximately seventy-five (75) hours per week.

111. Throughout the Prithvipal Singh Employment Period, Plaintiff Prithvipal Singh was only permitted to take a meal break during his shift consisting of between approximately ten (10) to fifteen (15) minutes.

112. At no point during the Prithvipal Singh Employment Period was Plaintiff Prithvipal Singh required to track his hours worked at the project site although he frequently witnessed Defendant Raj. Singh complete sign-in sheets at the Sayville High School project site. During certain shifts, Plaintiff Prithvipal Singh was permitted to handwrite his own name on the timesheets but the majority of the time, Defendant Raj. Singh would handwrite Plaintiff's and other employees' names.

113. Although the certified payrolls records submitted by the BSW Defendants state that Plaintiff Prithvipal Singh was paid a base hourly rate of $72.11 per hour as a Laborer, Defendants did not pay Plaintiff Prithvipal Singh this hourly rate. For his work, Plaintiff Prithvipal Singh was told by Defendant Raj. Singh that he would be paid approximately two hundred dollars ($200.00) per shift; however, the BSW Defendants did not compensate Plaintiff Prithvipal consistent with their oral agreement, and failed to pay him the applicable prevailing rates or supplemental benefits of any kind that he was entitled to receive for his work.

114. During his employment with Defendants, Plaintiff Prithvipal received a total of four (4) checks, two (2) of which cleared with his bank, and two (2) which were returned due to insufficient funds. The two (2) checks Plaintiff Prithvipal Singh received in compensation for work and which cleared his account, amounted to a combined total of approximately four thousand five hundred dollars ($4,500.00). The two (2) checks which did not clear with Plantiff Prithvipal's bank because of insufficient funds were: 1) Check No. 2012 dated July 23, 2021, in the amount of $1,216.12; and 2) Check No. 2013 dated July 30, 2021, in the amount of $2,245.11.

115. Upon information and belief, Plaintiff Prithvipal Singh should have been paid at the prevailing rate of wages (including supplemental benefits) of a "Mason / Brick/Block Layer" from the New York State Department of Labor Article 8 Prevailing Wage Schedules. Specifically, Plaintiff Gurdeep Singh should have been paid $63.94 per hour, plus $29.55 in supplemental benefits, and a $53.65 per hour base wage rate for overtime hours worked per week.

116. At the start of the Prithvipal Singh Employment Period, Plaintiff Prithvipal Singh was told by Defendant Raj. Singh that if at any point an inspector at the Sayville High School job site inquired about his pay rate, that he should state that he was paid seventy dollars ($70.00) per hour, even though this was not the rate Plaintiff Prithvipal received in compensation for his work.

117. Throughout the relevant time period, for those weeks when Plaintiff Prithvipal Singh was paid, he was provided with a corporate check signed by Arshjeet Singh.

118. The BSW Defendants engaged in several pay practices across the board that were not accurately reflected in the certified payroll submissions signed by Defendant Arshjeet Singh. Specifically, the BSW Defendants did not pay Plaintiffs the hourly rates reflected in the certified payroll submissions, let alone the applicable prevailing wage rates and supplementary benefits, or overtime pay that Plaintiffs were entitled to receive for the work they performed on the Sayville High School Project. Furthermore, although the certified payroll documents specifically state that the Signatory Party (Defendant Arshjeet Singh), declares that all persons employed on the project have received their fully weekly wages earned and "that no rebates have been or will be made either directly or indirectly to or on behalf of [the Corporate Defendant] from the full weekly wages earned by any person and that no deductions have been made either directly or indirectly from the full wages earned by any person…" by paying Plaintiffs their wages via checks with insufficient funds and by failing to issue Plaintiffs replacement checks, Defendants have caused Plaintiffs to incur significant loss in wages in violation of the representations made in the payroll reports and the applicable prevailing wage laws.

119. The BSW Defendants misclassified certain Plaintiffs as Laborers when in fact those Plaintiffs were hired to perform and performed skilled work, including but not limited to masonry, bricklaying, and carpentry.

120. Plaintiffs allege that they did not receive a proper wage notice when they were hired and/or before a change of pay rate, as required by the NYLL, from BSW Defendants at any point during the Relevant Time Period.

121. Plaintiffs further allege that they were not provided with wage statements along

with the late check payments they received during their employment with the BSW Defendants.

**BSW Defendants' Unlawful Corporate Policies**

122. The BSW Defendants have maintained a corporate policy that applied to all construction workers who performed on the Sayville High School Project. The BSW Defendants' corporate policy resulted in severe underpayment of wages for these employees, including but not limited to the BSW Defendants' failure to pay minimum wages for all hours worked or wages of any kind for time for certain weeks at a time, failure to pay the applicable prevailing wage rates, supplementary benefits, overtime compensation for all shifts worked in excess of eight (8) hours per day, and/or overtime premiums of one and one-half (1.5) times the regular hourly rate for all hours worked in excess of forty (40) per week.

123. Upon information and belief, during the period of time for which Plaintiffs and the Opt-In Plaintiffs performed work at the Sayville High School, BSW Defendants failed to ensure payment of the correct prevailing rate of wages and supplemental benefits, including overtime pay, to which Plaintiffs and the Opt-Ins were entitled to receive.

124. BSW Defendants' failure to pay Plaintiffs prevailing wages and supplemental benefits for work performed at the Sayville High School applied to all of Defendants' construction workers throughout the relevant period.

125. In addition, the BSW Defendants misclassified employees as Laborers in the certified payroll reports, even though these individuals were hired to perform skilled work, which required them to receive higher prevailing wage rates then those listed in the payroll reports.

126. BSW Defendants failed to provide Plaintiffs and their other similarly situated employees with proper wage notices at the time of hire or before a change of pay rate or proper wage statement(s) with every payment of wages or accurate wage statements pursuant to the

NYLL.

**FIRST CAUSE OF ACTION**
**FAIR LABOR STANDARDS ACT – UNPAID MINIMUM WAGE**
**(Brought on Behalf of Plaintiffs and the Collective Action Members)**

127. Plaintiffs, on behalf of themselves and the Collective Action Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

128. By failing to pay minimum wage for all hours worked, Defendants have violated and continue to violate the FLSA, 29 U.S.C. §§ 201 et seq., including 29 U.S.C. §§ 206 and 215(a)(2).

129. The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

130. Defendants' failure to pay minimum wages for all hours worked caused Plaintiffs and the Collective Action Members to suffer loss of wages and interest thereon. Therefore, Plaintiffs and the Collective Action Members are entitled to recover from BSW Defendants their full unpaid minimum wages, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to 29 U.S.C. § 216(b).

**SECOND CAUSE OF ACTION**
**FAIR LABOR STANDARDS ACT – UNPAID OVERTIME**
**(Brought on Behalf of Plaintiffs and the Collective Action Members)**

131. Plaintiffs, on behalf of themselves and the Collective Action Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

132. BSW Defendants violated the FLSA overtime rights of Plaintiffs and the Collective Action Members by failing to pay overtime premiums of one and one-half (1.5) times the employees' regular hourly rates for all hours worked in excess of forty (40) hours per week.

133. By failing to pay overtime at a rate not less than one and one-half times the regular rate of pay for work performed in excess of 40 hours per week, BSW Defendants have violated and continue to violate the FLSA, 29 U.S.C. §§ 201 *et seq.*, including 29 U.S.C. §§ 207(a)(1) and 215(a)(2).

134. The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

135. Defendants' failure to pay overtime caused Plaintiffs and the Collective Action Members to suffer loss of wages and interest thereon. Plaintiffs and the Collective Action Members are entitled to recover from BSW Defendants their unpaid overtime premium compensation, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to 29 U.S.C. § 216(b).

**THIRD CAUSE OF ACTION**
**NEW YORK LABOR LAW – UNPAID MINIMUM WAGE**
**(Brought on Behalf of Plaintiffs and the Opt-In Plaintiffs)**

136. Plaintiffs, on behalf of themselves and the Opt-In Plaintiffs, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

137. BSW Defendants willfully violated Plaintiffs' and Opt-In Plaintiffs' rights by failing to pay minimum wage for all hours worked, in violation of the NYLL and regulations promulgated thereunder.

138. BSW Defendants' failure to pay minimum wage for all hours worked caused Plaintiffs and the Opt-In Plaintiffs to suffer loss of wages and interest thereon. Plaintiffs and the Opt-In Plaintiffs are entitled to recover from BSW Defendants their unpaid minimum wages, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to NYLL §§ 663(1) *et seq.*

**FOURTH CAUSE OF ACTION**
**NEW YORK LABOR LAW – UNPAID OVERTIME**
**(Brought on Behalf of Plaintiffs and the Opt-In Plaintiffs)**

139. Plaintiffs, on behalf of themselves and the Opt-In Plaintiffs, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

140. BSW Defendants violated the NYLL overtime rights of the Plaintiff and the Opt-In Plaintiffs by improperly treating them as exempt from the NYLL when they performed non-exempt duties and failing to pay overtime premiums consisting of one and one-half (1.5) times employees' regular hourly rates for all hours worked in excess of forty (40) hours per week.

141. BSW Defendants willfully violated Plaintiffs and the Opt-In Plaintiffs' rights by failing to pay overtime compensation at a rate of not less than one and one-half times the regular rate of pay for hours worked in excess of forty (40) each week, in violation of the NYLL and regulations promulgated thereunder.

142. Defendants' failure to pay overtime premium compensation caused Plaintiff and the Opt-In Plaintiffs to suffer loss of wages and interest thereon. Plaintiff and the Opt-In Plaintiffs are entitled to recover from BSW Defendants their unpaid overtime compensation, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to NYLL §§ 663(1) *et seq.*

**FIFTH CAUSE OF ACTION**
**NEW YORK LABOR LAW – FAILURE TO PAY WAGES**
**(Brought on Behalf of Plaintiff and the Opt-In Plaintiffs)**

143. Plaintiffs, on behalf of themselves and the Opt-In Plaintiffs, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

144. Pursuant to NYLL § 191 and the cases interpreting same, workers such as Plaintiffs and the Opt-In Plaintiffs are entitled to be paid all their weekly wages "not later than seven calendar days after the end of the week in which wages are earned." Thus, BSW Defendants violated NYLL § 191 by failing to pay Plaintiffs and the Opt-In Plaintiffs all of their wages earned within the week such wages were due.

145. Pursuant to NYLL § 193, "No employer shall make any deduction from the wages of an employee," such as Plaintiffs and the Opt-In Plaintiffs, that is not otherwise authorized by law or by the employee.

146. By withholding wages and overtime compensation from Plaintiffs and the Opt-In Plaintiffs, pursuant to NYLL § 193 and the cases interpreting same, BSW Defendants made unlawful deductions in wages owed to Plaintiffs.

147. BSW Defendants' failure to comply with NYLL §§ 191 and 193 caused Plaintiffs and the Opt-In Plaintiffs to suffer loss of wages and interest thereon. Plaintiffs and the Opt-In Plaintiffs are entitled to recover from BSW Defendants their unpaid wages, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to NYLL §§ 663(1) *et seq*.

**SIXTH CAUSE OF ACTION**
**NEW YORK LABOR LAW – WAGE STATEMENT VIOLATIONS**
**(Brought on Behalf of Plaintiffs and the Opt-In Plaintiffs)**

148. Plaintiffs, on behalf of themselves and the Opt-In Plaintiffs, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

149. BSW Defendants have willfully failed to supply Plaintiffs and the Opt-In Plaintiffs a proper wage statement as required by Article 6, § 195(3).

150. Due to BSW Defendants' violations of the NYLL, Plaintiffs and the Opt-In Plaintiffs are entitled to recover from Defendants two hundred fifty dollars ($250.00) per employee for each day that the violations occurred or continue to occur, or a total of five thousand dollars ($5,000) per employee, as provided for by NYLL §§ 198(1-d) liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, pre-judgment and post-judgment interest, and injunctive and declaratory relief.

**SEVENTH CAUSE OF ACTION**
**NEW YORK LABOR LAW –WAGE NOTICE VIOLATIONS**
**(Brought on Behalf of Plaintiffs and the Opt-In Plaintiffs)**

151. Plaintiffs, on behalf of themselves and the Opt-In Plaintiffs, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

152. BSW Defendants have willfully failed to supply Plaintiffs and the Opt-In Plaintiffs notice as required by Article 6, § 195(1), or before a change of pay rate, in English or in the language identified by Plaintiffs and the Opt-In Plaintiffs as their primary language, containing Plaintiffs' and Opt-In Plaintiffs' rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; hourly rate or rates of pay and overtime rate

or rates of pay if applicable; the regular pay day designated by the employer in accordance with NYLL, Article 6, § 191; the name of the employer; or any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary.

153. Due to BSW Defendants' violations of the NYLL, Plaintiffs and the Opt-In Plaintiffs are entitled to recover from BSW Defendants fifty dollars ($50.00) per employee for each day that the violations occurred or continue to occur, or a total of five thousand dollars ($5,000.00) per employee, as provided for by NYLL, Article 6, § 198(1-b), liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, pre-judgment and post-judgment interest, and injunctive and declaratory relief.

**EIGHTH CAUSE OF ACTION**
**BREACH OF CONTRACT**
**(Brought on Behalf of Plaintiffs and the Opt-In Plaintiffs)**

154. Plaintiffs, on behalf of themselves and the Opt-In Plaintiffs, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

155. Upon information and belief, the Public Works Contracts entered into by BSW contained schedules of the prevailing rates of wages and supplemental benefits or reference to the NYLL provisions governing payment of prevailing wages to be paid to Plaintiffs and the employees performing work pursuant to such contracts.

156. Those prevailing rates of wages and supplemental benefits were made part of the Public Works Contracts for the benefit of the Plaintiffs and the other employees performing work pursuant to such contracts. In the event that the contracts or agreements entered into failed to

explicitly contain prevailing wage schedules, the prevailing wage requirements were supplemented as a matter of law, requiring BSW to pay the Plaintiffs and Opt-In Plaintiffs prevailing wages, daily/weekly overtime and supplemental benefits for all work performed.

157. BSW's failure to pay Plaintiffs and the Opt-In Plaintiffs at the correct prevailing wage rates for straight time, overtime, and supplemental benefits for work performed on Public Works Projects constituted a material breach of the contracts entered into directly or indirectly between BSW and certain public entities.

158. As a result of BSW's failure to pay Plaintiffs and the Opt-In Plaintiffs at prevailing wage rates, they are entitled to relief from BSW for breach of contract under New York common law of contracts.

**NINTH CAUSE OF ACTION**
**UNJUST ENRICHMENT & QUANTUM MERUIT**
**(Pled In The Alternative)**
**(Brought on Behalf of Plaintiffs and the Opt-In Plaintiffs)**

159. Plaintiffs, on behalf of themselves and the Opt-In Plaintiffs, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

160. Based on BSW's failure to pay Plaintiffs and the Opt-In Plaintiffs the appropriate prevailing wage rates, BSW was unjustly enriched at the expense of Plaintiffs.

161. Equity and good conscience require that BSW pay restitution to Plaintiffs.

162. Upon information and belief, when BSW entered into the contract, they agreed to pay the required prevailing wages, overtime, shift-differential and holiday premiums, and supplemental benefit rates of pay to Plaintiffs and other employees who performed work pursuant to the contracts.

163. Plaintiffs provided valuable services to BSW performing prevailing wage jobs for

which Plaintiff expected compensation. BSW knowingly accepted such services yet failed to pay Plaintiffs the reasonable value of such services as defined by the New York State and New York City prevailing wage schedules.

164. As a result of BSW's failure to pay Plaintiffs at prevailing wage rates on prevailing wage jobs and Defendants' corresponding unjust enrichment, Plaintiffs are entitled to relief from BSW under New York's common law of unjust enrichment.

165. As a result of BSW's failure to pay Plaintiffs the reasonable value of the valuable services they rendered, Plaintiffs are entitled to relief from BSW under New York's common law of quantum meruit.

**TENTH CAUSE OF ACTION**
**SURETYSHIP – AGAINST DEFENANT QBE INSURANCE CORPORATION**
**(Brought on Behalf of Plaintiffs and the Opt-In Plaintiffs)**

166. Plaintiffs, on behalf of themselves and the Opt-In Plaintiffs, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

167. By issuing a bond to BSW, QBE assumed joint and several liability to pay the Plaintiffs and Opt-In Plaintiffs any and all prevailing wages and supplemental benefits due and owing them which BSW failed to pay pursuant to the terms of the Bond.

168. BSW has failed to pay and ensure payment of prevailing wages and supplemental benefits to the Plaintiffs and the Opt-In Plaintiffs for work performed on the site of the Public Works Project where a bond was furnished in a collective amount to be determined at trial, plus interest, costs and attorneys' fees.

169. Pursuant to the terms of the Bond, QBE is required to make payment to Plaintiffs and the Opt-In Plaintiffs in an amount not yet known, but to be determined at trial, plus interest,

costs and attorneys' fees.

**ELEVENTH CAUSE OF ACTION**
**NEW YORK LABOR LAW § 220-g – AGAINST DEFENDANT QBE INSURANCE CORPORATION**
**(Brought on Behalf of Plaintiffs and the Opt-In Plaintiffs)**

170. Plaintiffs, on behalf of themselves and the Opt-In Plaintiffs, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

171. As a matter of law, the Bond issued by QBE on the Public Works Project was issued pursuant to New York State Finance Law § 137.

172. New York Labor Law § 220-g explicitly grants affected employees with the right to "bring an action to recover from the bond which is required by section one hundred thirty-seven of the state finance law, of the contractor, the subcontractor or both, unpaid wages and supplements, including interest as provided for in subdivision eight of section two hundred twenty of this article, due to persons furnishing labor to either the contractor or subcontractor."

173. Plaintiffs and the Opt-In Plaintiffs are "affected employees" as they have performed work for BSW on the Public Works Project bonded by QBE and did not receive the prevailing rate of wages and supplemental benefits from BSW.

174. Consequently, Plaintiffs and the Opt-In Plaintiffs have a direct action against QBE to recover the prevailing wages and supplemental benefits that BSW did not pay to the Plaintiffs and Opt-In Plaintiffs.

175. For the foregoing reasons, QBE is liable to Plaintiffs and the Opt-In Plaintiffs for all sums owed by BSW in an amount to be determined at trial, plus interest.

**PRAYER FOR RELIEF**

Wherefore, Plaintiffs, on behalf of themselves and all other similarly situated Collective Action Members and Class Members, respectfully request that this Court grant the following relief:

a. Designation of this action as a collective action on behalf of the Collective Action Members and ordering the prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of an FLSA Opt-In Class, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b) and appointing Plaintiffs and their counsel to represent the Collective Action Members;

b. An order tolling the statute of limitations;

c. A declaratory judgment that the practices complained of herein are unlawful under the FLSA, NYLL and New York Common Law;

d. An injunction against BSW Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with Defendants, as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

e. An award of compensatory damages as a result of BSW Defendants' failure to pay minimum wages and overtime compensation pursuant to the FLSA and the NYLL and supporting regulations;

f. An award of compensatory damages as a result of BSW Defendants' failure to pay all wages to which Plaintiff and the Opt-In Plaintiffs are entitled, pursuant to the NYLL and supporting regulations;

g. An award of liquidated and/or punitive damages as a result of the BSW Defendants' willful failure to pay minimum wages and overtime compensation pursuant to the FLSA and the NYLL and supporting regulations;

h. An award of liquidated damages for BSW Defendants' failure to pay all wages to which Plaintiff and the Class Members are entitled, pursuant to the NYLL and supporting regulations;

i. An award of two hundred fifty dollars ($250.00) per Plaintiff and each of the Opt-In Plaintiffs for each day that the violations of NYLL, Article 6 § 195(3), pertaining to distribution of wage statements, occurred or continue to occur, or a total of five thousand dollars ($5,000.00) per Plaintiff and each of the Opt-In Plaintiffs as provided for by NYLL, Article 6 § 198(1-d);

j. An award of fifty dollars ($50.00) per Plaintiff and each of the Opt-In Plaintiffs for each day that the violations of NYLL, Article 6 § 195(1), pertaining to distribution of wage notice, occurred or continue to occur, or a total of five thousand dollars ($5,000.00) per Plaintiff and each of the Opt-In Plaintiffs as provided for by NYLL § 198(1-b);

k. An award of monetary damages from all Defendants to be proven at trial for all unpaid prevailing wages, daily/weekly overtime and supplemental benefits owed to Plaintiff and the Opt-In Plaintiffs;

l. An award of prejudgment and post-judgment interest;

m. An award of costs and expenses of this action together with reasonable attorneys' and expert fees; and

n. Such other and further relief as this Court deems just and proper.

**DEMAND FOR TRIAL BY JURY**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury on all questions of fact raised by the complaint.

Dated: New York, New York
January 3, 2022

Respectfully submitted,

**PELTON GRAHAM LLC**

By: ______________________________

Brent E. Pelton (BP 1055)
Pelton@PeltonGraham.com
Taylor B. Graham (TG 9607)
Graham@PeltonGraham.com
111 Broadway, Suite 1503
New York, New York 10006
Telephone: (212) 385-9700
Facsimile: (212) 385-0800

*Attorneys for Plaintiffs and the putative FLSA Collective*

**Notice of Shareholder Liability for Services Rendered**
**Pursuant to § 630 of the Business Corporation Law of New York**

Pursuant to the provisions of § 630 of the Business Corporation Law of New York ("NYBCL"), the ten (10) largest shareholders of BSW General Construction Corp. are hereby notified that the plaintiffs in this matter, individually and on behalf of the putative FLSA collective they seek to represent, intend to enforce your personal liability, as the ten (10) largest shareholders of BSW General Construction Corp., and to charge you with indebtedness of said corporation to the plaintiffs for services performed for the corporation as employees during the six (6)-year period preceding the filing of the complaint.

Services for the above-referenced corporation has concluded within 180 days of the filing date of this complaint.

Dated: January 3, 2022

Brent E. Pelton, Esq.

*Attorneys for Plaintiffs and the putative FLSA Collective*

# CONSENT TO BECOME PARTY PLAINTIFF

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest the failure of BSW General Construction Corp. and/or their respective owners, affiliated companies, subsidiaries, contractors, directors, officers, franchisees and/or affiliates to pay me prevailing wages, minimum wages and overtime wages as required under state and/or federal law, and also authorize the filing of this consent in the action(s) challenging such conduct. I authorize being **named as a representative plaintiff** in this action to make decisions on behalf of all other plaintiffs concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiffs' counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit. I understand that I will be represented by Pelton Graham LLC without prepayment of costs or attorneys' fees. I understand that if plaintiffs are successful, costs expended by attorneys on my behalf will be deducted from my settlement or judgment first. I understand that my attorneys may petition the court for an award of fees and costs to be paid by defendants on my behalf. I understand that the fees retained by the attorneys will be either the amount received from the defendants or approximately 1/3 (33.33%) of my total settlement or judgment amount (including fees), whichever is greater.

DocuSigned by:
[signature]
B6BF4CFECEDD4D9...

Signature

Gurdeep Singh

Printed Name

# CONSENT TO BECOME PARTY PLAINTIFF

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest the failure of BSW General Construction Corp. and/or their respective owners, affiliated companies, subsidiaries, contractors, directors, officers, franchisees and/or affiliates to pay me prevailing wages, minimum wages and overtime wages as required under state and/or federal law, and also authorize the filing of this consent in the action(s) challenging such conduct. I authorize being **named as a representative plaintiff** in this action to make decisions on behalf of all other plaintiffs concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiffs' counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit. I understand that I will be represented by Pelton Graham LLC without prepayment of costs or attorneys' fees. I understand that if plaintiffs are successful, costs expended by attorneys on my behalf will be deducted from my settlement or judgment first. I understand that my attorneys may petition the court for an award of fees and costs to be paid by defendants on my behalf. I understand that the fees retained by the attorneys will be either the amount received from the defendants or approximately 1/3 (33.33%) of my total settlement or judgment amount (including fees), whichever is greater.

Rajinder Singh
Signature

Rajinder Singh
Printed Name

## CONSENT TO BECOME PARTY PLAINTIFF

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest the failure of BSW General Construction Corp. and/or their respective owners, affiliated companies, subsidiaries, contractors, directors, officers, franchisees and/or affiliates to pay me prevailing wages, minimum wages and overtime wages as required under state and/or federal law, and also authorize the filing of this consent in the action(s) challenging such conduct. I authorize being **named as a representative plaintiff** in this action to make decisions on behalf of all other plaintiffs concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiffs' counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit. I understand that I will be represented by Pelton Graham LLC without prepayment of costs or attorneys' fees. I understand that if plaintiffs are successful, costs expended by attorneys on my behalf will be deducted from my settlement or judgment first. I understand that my attorneys may petition the court for an award of fees and costs to be paid by defendants on my behalf. I understand that the fees retained by the attorneys will be either the amount received from the defendants or approximately 1/3 (33.33%) of my total settlement or judgment amount (including fees), whichever is greater.

Jasvir Singh — JASVIR SINGH GHOTRA

Signature — Printed Name

**CONSENT TO BECOME PARTY PLAINTIFF**

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest the failure of BSW General Construction Corp. and/or their respective owners, affiliated companies, subsidiaries, contractors, directors, officers, franchisees and/or affiliates to pay me prevailing wages, minimum wages and overtime wages as required under state and/or federal law, and also authorize the filing of this consent in the action(s) challenging such conduct. I authorize being **named as a representative plaintiff** in this action to make decisions on behalf of all other plaintiffs concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiffs' counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit. I understand that I will be represented by Pelton Graham LLC without prepayment of costs or attorneys' fees. I understand that if plaintiffs are successful, costs expended by attorneys on my behalf will be deducted from my settlement or judgment first. I understand that my attorneys may petition the court for an award of fees and costs to be paid by defendants on my behalf. I understand that the fees retained by the attorneys will be either the amount received from the defendants or approximately 1/3 (33.33%) of my total settlement or judgment amount (including fees), whichever is greater.

Gian Singh
Signature

GIAN SINGH MULTANI
Printed Name

**CONSENT TO BECOME PARTY PLAINTIFF**

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest the failure of BSW General Construction Corp. and/or their respective owners, affiliated companies, subsidiaries, contractors, directors, officers, franchisees and/or affiliates to pay me prevailing wages, minimum wages and overtime wages as required under state and/or federal law, and also authorize the filing of this consent in the action(s) challenging such conduct. I authorize being **named as a representative plaintiff** in this action to make decisions on behalf of all other plaintiffs concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiffs' counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit. I understand that I will be represented by Pelton Graham LLC without prepayment of costs or attorneys' fees. I understand that if plaintiffs are successful, costs expended by attorneys on my behalf will be deducted from my settlement or judgment first. I understand that my attorneys may petition the court for an award of fees and costs to be paid by defendants on my behalf. I understand that the fees retained by the attorneys will be either the amount received from the defendants or approximately 1/3 (33.33%) of my total settlement or judgment amount (including fees), whichever is greater.

| | |
|---|---|
| [signature] | JAGWINDER Singh |
| Signature | Printed Name |

# CONSENT TO BECOME PARTY PLAINTIFF

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest the failure of BSW General Construction Corp. and/or their respective owners, affiliated companies, subsidiaries, contractors, directors, officers, franchisees and/or affiliates to pay me prevailing wages, minimum wages and overtime wages as required under state and/or federal law, and also authorize the filing of this consent in the action(s) challenging such conduct. I authorize being **named as a representative plaintiff** in this action to make decisions on behalf of all other plaintiffs concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiffs' counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit. I understand that I will be represented by Pelton Graham LLC without prepayment of costs or attorneys' fees. I understand that if plaintiffs are successful, costs expended by attorneys on my behalf will be deducted from my settlement or judgment first. I understand that my attorneys may petition the court for an award of fees and costs to be paid by defendants on my behalf. I understand that the fees retained by the attorneys will be either the amount received from the defendants or approximately 1/3 (33.33%) of my total settlement or judgment amount (including fees), whichever is greater.

Avtar Singh
Signature

Avtar Singh
Printed Name

# CONSENT TO BECOME PARTY PLAINTIFF

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest the failure of BSW General Construction Corp. and/or their respective owners, affiliated companies, subsidiaries, contractors, directors, officers, franchisees and/or affiliates to pay me prevailing wages, minimum wages and overtime wages as required under state and/or federal law, and also authorize the filing of this consent in the action(s) challenging such conduct. I authorize being **named as a representative plaintiff** in this action to make decisions on behalf of all other plaintiffs concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiffs' counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit. I understand that I will be represented by Pelton Graham LLC without prepayment of costs or attorneys' fees. I understand that if plaintiffs are successful, costs expended by attorneys on my behalf will be deducted from my settlement or judgment first. I understand that my attorneys may petition the court for an award of fees and costs to be paid by defendants on my behalf. I understand that the fees retained by the attorneys will be either the amount received from the defendants or approximately 1/3 (33.33%) of my total settlement or judgment amount (including fees), whichever is greater.

DocuSigned by:
Prithvipal Singh
6C4B5AF6618D447...

Signature

Prithvipal Singh

Printed Name